UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ALEXANDER WILLIAMS, JR.,

                Plaintiff,

– *against* –

THE CITY OF NEW YORK
DEPARTMENT OF CORRECTION,
THE CITY OF NEW YORK, and NYC
HEALTH & HOSPITALS
CORPORATION,

                Defendants.

**OPINION & ORDER**

19 Civ. 9528 (ER)

Ramos, D.J.:

       Alexander Williams, Jr., proceeding *pro se*, commenced this action on September 3, 2019 in New York County Supreme Court, bringing claims related to two incidents that took place while he was a detainee at the Manhattan Detention Complex in New York City (the "MDC"). Docs. 1, 1-3. The City of New York Department of Correction (the "DOC"), the only defendant named at the time, removed the action to this Court pursuant to 28 U.S.C. §§ 1441(a) and (c), on the premise that Williams's complaint alleged violations of his 14th Amendment constitutional rights pursuant to 42 U.S.C. § 1983. Doc. 1 ¶ 7. After removal, Williams amended his complaint to add the City of New York (the "City") and the NYC Health & Hospitals Corporation (the "HHC"). Doc. 7-1 ¶ 3. Before the Court is Defendants' motion to dismiss the action for failure to state a claim, Doc. 8, and Plaintiff's unopposed motion for summary judgment, Doc. 18. For the following reasons, Defendants' motion is GRANTED, and Plaintiff's motion is DENIED.

I.      BACKGROUND

A.      **Factual Background**

Williams brings the instant case based on incidents that occurred on June 25, 2019 and July 17, 2019, when he was detained at the MDC.[1]  Doc. 1-3.  On these dates, he was housed in Unit 9 North, a cellblock with no windows or circulation system.  *Id.* ¶¶ 1, 14, 15.  At approximately 2:00 p.m. on June 25, 2019, Unit 9 North was exposed to a large amount MK-9 and MK-4 oleoresin capsicum (OC) spray—commonly referred to as pepper spray—in connection with the forcible removal of an inmate.  *Id.* ¶ 1.  The officers working at what Williams calls the "bubble station" were forced to don gas masks in order to continue their duties because of the amount of pepper spray.  *Id.* ¶ 3.  At approximately 2:15 p.m., Williams informed a correction officer at the 9 North post that he was suffering from chest pains, having trouble breathing, and that he had a history of being asthmatic.  *Id.* ¶¶ 2, 5.  The area supervisor on shift contacted the medical department at approximately 2:25 p.m., but no one came to see Williams.  Doc. 7-1 ¶ 8.  After a shift change, the new area supervisor contacted the clinic at approximately 5:30 p.m. and again at approximately 8:00 p.m., requesting medical attention for Williams.  *Id.* ¶¶ 9-10.  When medical attention was not dispatched, Williams was eventually escorted to the clinic at 8:32 p.m.  *Id.* ¶ 11.  Williams states that since this incident, he has had to use his asthma pump more times than he had to previously.  Doc. 1-3 ¶ 12.

The second incident occurred at approximately 6:15 p.m. on July 17, 2019, also in Unit 9 North.  At that time, Correction Officer Ma used half a can of pepper spray during an altercation with an inmate.  *Id.* ¶¶ 13.  This allegedly occurred about four feet from Williams.  *Id.* ¶ 14.  As a result, Williams began to have trouble breathing, but was not permitted to return to his cell to retrieve his asthma pump.  *Id.* ¶ 16.  Williams claims that he was choking and banging on the cell door for medical assistance for at least 45 minutes.  *Id.* ¶ 17.  Williams states that he "was forced

---

[1] Although Williams does not state whether he was a pretrial detainee or whether he was sentenced at the time of the incidents, he references the standard for pretrial detainees throughout his later-filed motion for summary judgment. *See* Doc. 19 at 5–6.  Defendants also reference the same standard in their motion to dismiss.  *See* Doc. 9 at 4-5.  As such, the Court will assume that Williams was a pretrial detainee during the relevant period.

to use the toilet bowl and its water as a conduit to fresh air and pumping [sic] air into his mouth in order to prevent further medical matters."[2] *Id*. ¶ 18. Approximately an hour later, a correction officer handcuffed and escorted him to his cell to use his pump, and Williams informed this officer that he needed medical attention because of tightness in his chest and trouble breathing. *Id*. ¶¶ 19-20. Although medical attention was called for another inmate having trouble breathing, and despite Williams informing several officers that he also required medical attention even after using his pump, Williams was never seen by medical staff. *Id*. ¶¶ 21-22.

**B. Procedural History**

Williams commenced this action on September 3, 2019 in New York County Supreme Court of the State of New York. Doc. 1 ¶ 4. On October 15, 2019, the DOC removed the action to this Court. Doc. 1. The DOC filed a motion to dismiss the complaint on October 31, 2019. Docs. 4, 5. On November 1, 2019, Williams amended his complaint, adding the City and the HHC as defendants. Doc. 7-1. Defendants moved to dismiss the amended complaint on November 14, 2019. Doc. 8. Williams filed his opposition to the motion to dismiss on November 27, 2019. Doc. 11. On December 19, 2019, Defendants submitted a reply memorandum. Doc. 14. Williams subsequently submitted a motion for summary judgment on March 17, 2020. Doc. 18. That motion is unopposed.

**II. LEGAL STANDARD**

**A. 12(b)(6) Motion to Dismiss**

When ruling on a motion to dismiss pursuant to Rule 12(b)(6), district courts are required to accept as true all factual allegations in the complaint and to draw all reasonable inferences in the plaintiff's favor. *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this requirement does not apply to legal conclusions, bare assertions, or conclusory allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 681 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). In order to satisfy the pleading standard set forth in Rule 8, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Iqbal*, 556

---

[2] Williams does not detail how precisely he used the water to obtain relief.

U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Accordingly, a plaintiff is required to support his claims with sufficient factual allegations to show "more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557).

Courts must construe a *pro se* complaint liberally and interpret its claims as "rais[ing] the strongest arguments that they suggest."  *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d. Cir. 2006) (citing *Pabon v. Wright*, 459 F.3d 241, 248 (2d Cir. 2006)).  When a plaintiff's claims involve civil rights violations, the Court applies this standard "with particular force." *Jackson v. N.Y.S. Dep't of Labor*, 709 F. Supp. 2d 218, 224 (S.D.N.Y. 2010) (citing *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).  "However, even *pro se* plaintiffs asserting civil right claims cannot withstand a motion to dismiss unless their pleadings contain factual allegations sufficient to raise a 'right to relief above the speculative level.'"  *Id.* (quoting *Twombly*, 550 U.S. at 555).  To survive a motion to dismiss pursuant to Rule 12(b)(6), a *pro se* plaintiff's pleadings still must contain "more than an unadorned, the defendant-unlawfully-harmed me accusation."  *Iqbal*, 556 U.S. at 678.

**B.     Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact."  Fed. R. Civ. P. 56(a).  "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)).  A fact is "material" if it might "affect the outcome of the suit under the governing law."  *Id*. (internal quotation marks and citation omitted).  The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Where, like here, "the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an

essential element of the nonmovant's claim." *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009) (citing *Celotex*, 477 U.S. at 322–23). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008) (citing *Celotex*, 477 U.S. at 322–23).

Even if a motion for summary judgment is unopposed, the Court is required to "review the motion . . . and determine from what it has before it whether the moving party is entitled to summary judgment as a matter of law." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004) (internal quotation marks omitted) (quoting *Custer v. Pan Am. Life Ins. Co.*, 12 F.3d 410, 416 (4th Cir. 1993)). If the burden of proof at trial would fall on the movant, that party's "own submissions in support of the motion must entitle it to judgment as a matter of law." *Albee Tomato, Inc. v. A.B. Shalom Produce Corp.*, 155 F.3d 612, 618 (2d Cir. 1998). The Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotation marks omitted) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)).

*Pro se* litigants' submissions "are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (per curiam) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)); *see also Young v. New York City Dep't of Educ.*, No. 09 Civ. 6621, 2010 WL 2776835, at *5 (S.D.N.Y. July 13, 2010) (noting that the same principles apply to briefs and opposition papers filed by *pro se* litigants). Although "*pro se* status 'does not exempt a party from compliance with relevant rules of procedural and substantive law,'" *Triestman*, 470 F.3d at 477 (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)), courts read the pleadings and opposition papers submitted by *pro se* litigants "liberally and interpret them 'to raise the strongest arguments that they suggest,'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). The obligation to read a

*pro se* litigant's pleadings leniently "applies with particular force when the plaintiff's civil rights are at issue." *Jackson*, 709 F. Supp. 2d at 224 (citing *McEachin*, 357 F.3d at 200).

## III. DISCUSSION

Defendants move to dismiss on the grounds that (a) Williams has failed to allege facts sufficient to establish that his Fourteenth Amendment rights were violated, and (b) his failure to allege an underlying constitutional violation is fatal to his *Monell* claim. Doc. 9 at 1.[3] The Court agrees with both of these arguments.

### A. Fourteenth Amendment Claims

Williams's complaint can best be interpreted as alleging a Fourteenth Amendment violation pursuant to Section 1983.[4] "Section 1983 provides a private cause of action for 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Boyland v. Wing*, 487 F. Supp. 2d 161, 167 (E.D.N.Y. 2007) (quoting 42 U.S.C. § 1983). "Section 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). To succeed under Section 1983, Williams must allege that (1) the challenged action deprived him of a right secured by the Constitution or federal law, and (2) defendants are state actors or acted under color of state law at the time of the challenged action. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999); *see also Wimmer v. Suffolk Cty. Police Dep't*, 176 F.3d 125, 136–37 (2d Cir. 1999).

In this case, Williams alleges that Defendants were deliberately indifferent to his medical care in violation of his Fourteenth Amendment rights when they delayed and denied him

---

[3] Defendants also argue that the DOC must be dismissed because it is a non-suable entity. Doc. 9 at 7-8. Williams concedes that the DOC should be dismissed. Doc. 11 ¶ 19. The Court will therefore examine these arguments as they pertain to the remaining Defendants.

[4] Jailed individuals are protected against "deliberate indifference to conditions that pose a substantial risk of serious harm to his physical well-being" by either the Eighth Amendment or the Fourteenth Amendment. *Ortiz v. Dep't of Corr. of City of New York*, No. 08 Civ. 2195 (RJS) (HBP), 2011 WL 2638137, at *4 (S.D.N.Y. Apr. 29, 2011), *report and recommendation adopted sub nom. Ortiz v. Hernandez*, No. 08 Civ. 2195 (RJS), 2011 WL 2638140 (S.D.N.Y. July 5, 2011). "If the individual is a sentenced prisoner, the source of protection is the Eighth Amendment. If the individual is a pretrial detainee, the source of protection is the Due Process Clause of the Fourteenth Amendment." *Id*. (citations omitted). Because Williams was a pretrial detainee at the time of the incidents, the Fourteenth Amendment applies here.

treatment after exposing him to pepper spray. Doc. 1-3 ¶¶ 24-26. To state a claim for deliberate indifference to medical care, Williams must show that (1) he suffered an objectively sufficient "serious medical condition," and (2) the prison official acted with "deliberate indifference to that serious medical need." *Chavis v. Kienert*, No. 03 Civ. 0039 (FJS) (RFT), 2005 WL 2452150, at *22 (N.D.N.Y. Sept. 30, 2005) (citing *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994)). First, "to establish an objective deprivation, 'the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health.'" *Darnell v. Pineiro*, 849 F.3d 17, 30 (2d Cir. 2017) (quoting *Walker*, 717 F.3d at 125). Second, to show deliberate indifference under the Fourteenth Amendment, the official need only "recklessly fail[ ] to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id*. at 35 (citing *Kingsley v. Hendrickson*, 576 U.S. 389 (2015)). While not clearly distinguished by Defendants' Motion to Dismiss, Doc. 9 at 5, "[u]nder the Fourteenth Amendment, deliberate indifference is measured from an objective perspective." *Smith v. Outlaw*, No. 15 Civ. 9961 (RA), 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (citing *Darnell*, 849 F.3d at 35). Williams's complaint meets neither of these two prongs.

    1. *Seriousness of Williams's Condition*

Under the so-called objective prong, a medical need is "sufficiently serious" if it presents a "condition of urgency, one that may produce death, degeneration, or extreme pain." *Lloyd v. Lee*, 570 F. Supp. 2d 556, 566 (S.D.N.Y. 2008) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994)). Courts consider factors such as "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (alteration in original) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)). In cases of delayed medical treatment, "it's the particular risk of harm faced by a prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical

condition, considered in the abstract, that is relevant" and the Court should "focus on the challenged *delay* or *interruption* in treatment rather than the prisoner's *underlying medical condition* alone." *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The seriousness of condition standard "contemplates a 'condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Chance*, 143 F.3d at 702 (quoting *Hathaway*, 37 F.3d at 66).

In this case, Williams alleges that the shortness of breath and chest pains he experienced as a result of exposure to pepper spray satisfies this condition. Doc. 1-3 ¶¶ 2, 16-18. Defendants argue that the facts "suggest only the existence of an asthmatic condition" and therefore do not rise to the level of being a sufficiently serious medical condition. Doc. 9 at 6. At no point does Williams allege that he suffered an asthma attack during either incident. "Unquestionably, infliction of pepper spray on an arrestee has a variety of incapacitating and painful effects." *Tracy v. Freshwater*, 623 F.3d 90, 98 (2d Cir. 2010). However, courts in this circuit have routinely found that while the temporary effects of pepper spray are "undoubtedly uncomfortable and painful," they do not establish a sufficiently serious injury. *Holmes v. New York City*, No. 17 Civ. 3874 (WHP), 2018 WL 4211311, at *7 (S.D.N.Y. Sept. 4, 2018); *see also Strassner v. O'Flynn*, No. 04 Civ. 6021 (CJS), 2006 WL 839411, at *8 (W.D.N.Y. Mar. 27, 2006) (collecting cases). Courts in this circuit have also determined that while merely "[b]eing an asthmatic (a person susceptible to asthma attacks) is not a condition . . . that is severe or 'sufficiently serious,'" they distinguish the mere "existence of the condition . . . from the situation in which an inmate is suffering an actual attack." *Patterson v. Lilley*, No. 02 Civ. 6056 (NRB), 2003 WL 21507345, at *4 (S.D.N.Y. June 30, 2003) (internal citation omitted); *see also Vazquez v. Spear*, No. 12 Civ. 6883 (VB), 2014 WL 3887880, at *6 (S.D.N.Y. Aug. 5, 2014) (an "asthmatic condition alone does not impose a substantial risk of serious harm").

For the June 25, 2019 incident, the basis for Williams's claim is that his medical treatment was delayed, not that it was inadequate. The Second Circuit has ruled the serious medical condition standard satisfied in cases where, for example, "officials deliberately delayed care as a form of punishment, ignored a 'life-threatening and fast-degenerating' condition for

three days, or delayed major surgery for over two years." *DeMeo v. Koenigsmann*, No. 11 Civ. 7099 (HBP), 2015 WL 1283660, at *11 (S.D.N.Y. Mar. 20, 2015) (quoting *Demata v. N.Y. State Corr. Dep't of Health Servs.*, 198 F.3d 233, 1999 WL 753142, at *2 (2d. Cir. 1999)). Although the Court appreciates that Williams was in pain and experienced respiratory distress, he has failed to allege that the delay in treatment exacerbated his asthmatic condition to the point of degeneration or extreme pain.

For the July 17, 2019 incident, Williams appears to claim that he was denied medical care altogether. After exposure to pepper spray, he alleges having issues breathing and that he was choking and banging on the cell door for at least 45 minutes, ultimately having to use the toilet bowl to clear his airways. Doc. 1-3 ¶¶ 16-18. Even after being returned to his cell to use his pump, Williams told correction officers that he was still having chest pains and breathing issues but never received medical attention. *Id*. ¶¶ 20-22. Defendants argue that Williams's request for medical assistance was acted upon by being given access to his pump. Doc. 9 at 7. Cases in which failure to receive treatment have been determined to satisfy this condition include, for example, *Brock v. Wright*, 315 F.3d 158, 163 (2d Cir. 2003) (failure to treat a facial keloid leading to chronic pain of a magnitude "between 'annoying' and 'extreme'"), *Harrison v. Barkley*, 219 F.3d 132, 137 (2d Cir. 2000) (failure to treat cavity creating a "a degenerative condition that tends to cause acute infections, debilitating pain and tooth loss if left untreated"), *Chance*, 143 F.3d at 703 (failure to treat dental problems resulting in extreme pain, teeth deterioration, and inability to eat properly), *Koehl v. Dalsheim*, 85 F.3d 86, 87 (2d Cir. 1996) (confiscation of prescribed eyeglasses and subsequent denial of medical treatment leading to loss of vision in one eye), and *Hathaway*, 37 F.3d at 64–65, 67 (failure to remove broken hip pins from prisoner's hip causing persistent pain for over three years), *cert. denied*, 513 U.S. 1154 (1995). Although Williams alleges that he has had to use his pump more frequently as a result of the pepper spray incidents, Doc. 1-3 ¶ 12, he has not alleged that this is a serious condition that has caused him chronic and substantial pain or that has significantly affected his daily activities.

As such, Williams's allegations do not rise to the level of seriousness required to meet this standard in the Second Circuit.

Therefore, Williams has failed to meet the first prong of the deliberate indifference standard for both incidents.

### 2. *Deliberate Indifference Prong*

Neither does Williams meet the second prong of the deliberate indifference standard. When a pretrial detainee alleges a violation of his Fourteenth Amendment rights, he "can allege either that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles v. Orange Cty.*, 925 F.3d 73, 87 (2d Cir. 2019). "Whether the state knew or should have known of the substantial risk of harm to the detainee is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Id.* (citing *Farmer*, 511 U.S. at 842). The Second Circuit has held that, "any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence." *Darnell*, 849 F.3d at 36.

In both incidents, Williams has failed to allege facts that support a claim of deliberate indifference. For the June 25, 2019 incident, while there was a delay of a few hours in his receiving medical treatment, the delay does not support the inference that the correction officers were deliberately indifferent to his medical needs. *See Lloyd v. City of New York*, 246 F. Supp. 3d 704, 720 (S.D.N.Y. 2017) (holding a delay of one day of providing antibiotics for a chest wound "amounts to negligent conduct at most" and does not rise to the level of a constitutional claim), *Grimmett v. Corizon Med. Assocs. of New York*, No. 15 Civ. 7351 (JPO) (SN), 2017 WL 2274485, at *5 (S.D.N.Y. May 24, 2017) (finding a doctor not negligent for a two-day delay in treatment). In fact, the correction officers called for medical attention for Williams multiple times. Docs. 1-3 ¶¶ 4-7, 7-1 ¶¶ 7-11.

For the July 17, 2019 incident, Williams has also failed to allege that correction officers "acted intentionally" to deprive him of adequate care or that they "recklessly failed to act with

reasonable care." *Darnell*, 849 F.3d at 35.  He was permitted to use his pump, albeit at least an hour after being exposed to pepper spray.  Doc. 1-3 ¶¶ 13-23.  Courts in this district have found that a prisoner's disagreement with the treatment he or she received "is not, without more, sufficient to state a constitutional claim." *Rivera v. Doe*, No. 16 Civ. 8809 (PAE) (BCM), 2018 WL 1449538, at *11 (S.D.N.Y. Feb. 26, 2018); *see also Johnson v. Schiff*, No. 17 Civ. 8000 (KMK), 2019 WL 4688542, at *12 (S.D.N.Y. Sept. 26, 2019) ("[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to a[ ] [deliberate indifference] violation.") (quoting *Chance*, 143 F.3d at 703).  While Williams may have preferred to see a medical professional, he is not alleged sufficient facts to support a claim of deliberate indifference against the correction officers.

**B.**     ***Monell* Liability**

Williams has not alleged sufficient facts to adequately plead a violation of his constitutional rights, and so there is no *Monell* liability.  A municipality is not liable under § 1983 where no constitutional violation has occurred.  *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986).

However, even if a constitutional violation had been found to have occurred, Williams's complaint still fails to establish a valid claim against Defendants.  Although a municipality cannot be held liable under § 1983 solely on a theory of *respondeat superior*, a § 1983 claim may be brought against a municipality if the alleged unconstitutional action was the result of an official policy, practice or custom.  *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–92 (1978).  The Second Circuit has established a two-prong test for Section 1983 claims brought against a municipality.  First, the plaintiff must prove "the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving [official]." *Johnson v. City of New York*, No. 06 Civ. 9426 (GBD), 2011 WL 666161, at *3 (S.D.N.Y. Feb. 15, 2011) (quoting *Vippolis v. Village of Haverstraw*, 768 F.2d 40, 44 (2d Cir. 1985)).  Second, the plaintiff must "establish a causal

connection . . . between the policy or custom and the alleged deprivation of his constitutional rights." *Id.*

In this case, Williams alleges the existence of an unconstitutional municipal practice of not providing inmates within MDC the opportunity to receive medical attention after correctional officers deploy pepper spray. Doc. 11 ¶ 20. However, proof of "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)) (internal quotation marks omitted). Without offering any factual support for his conclusory allegations, this Court cannot "infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 557).[5] Williams also alleges that defendants failed to adequately train and supervise their subordinates regarding DOC's chemical agent policy. Doc. 1-3 ¶ 29-30. However, Williams has not identified any specific training or supervisory deficiency which he contends resulted in the deprivation of his constitutional rights, nor has he alleged any facts to show that the City acted with deliberate indifference to any constitutional violations.

Therefore, even if a constitutional violation had been found, Williams's complaint would fail to establish a *Monell* claim.

## C.  State Law Claims

Williams also brought claims under New York State law. Under 28 U.S.C. § 1367(c)(3), the Court may decline to exercise jurisdiction over any non-federal claims over which it could have supplemental jurisdiction if the Court has dismissed all of the claims over which it has original jurisdiction. Subject matter jurisdiction in the instant action is based on federal question, 28 U.S.C. § 1331, and the jurisdictional counterpart to § 1983, 28 U.S.C. § 1343.

---

[5] Williams does allege that the DOC has a Chemical Agent Directive No. 4510 requiring that "any inmate that is and/or has been in the affected area of deployment of [pepper spray] must be removed to see medical within a reasonable amount of time." Doc. 11 ¶ 16. However, this claim is not that the DOC policy was improper, but that DOC officers failed to follow their own policy. An alleged failure to follow a policy "is the antithesis of a link between policy and action," and is insufficient to state a claim under *Monell*. *Walker v. Shaw*, No. 08 Civ. 10043 (CM), 2010 WL 2541711, at *7 (S.D.N.Y. June 23, 2010).

Having disposed of all of Plaintiff's federal claims, it would be inappropriate to adjudicate the remaining state law claims, and the Court declines to retain jurisdiction over the remaining state law claims. *See United Mine Workers v. Gibbs of Am.*, 383 U.S. 715, 726 (1966) ("[I]f the federal claims are dismissed before trial . . . the state claims should be dismissed as well."). "Where the state claims originally reached the federal forum by removal from a state court, the district court has the discretion to dismiss the claims without prejudice or remand them to the state court." *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) (citing *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343 (1988)); *see also Carnegie-Mellon*, 484 U.S. 343 at 357 ("[A] district court has discretion to remand to state court a removed case involving pendent claims upon a proper determination that retaining jurisdiction over the case would be inappropriate. The discretion to remand enables district courts to deal with cases involving pendent claims in the manner that best serves the principles of economy, convenience, fairness, and comity which underlie the pendent jurisdiction doctrine."), *Bhattacharya v. Suny Rockland Cmty. Coll.*, 719 F. App'x. 26, 28 (2d Cir. 2017) ("[A] district court . . . has discretion either to dismiss the [state law] claims without prejudice or to remand the claims."). Courts in this district have exercised this option, remanding state law claims upon the dismissal of all federal claims, particularly when the cases originated in state court. *See Smith v. Centerlight Healthcare, Inc.*, No. 17 Civ. 2135 (DLC), 2018 WL 3104086 (S.D.N.Y. June 21, 2018) (remanding *pro se* plaintiff's state law claims after dismissing federal claims), *Tracey Tooker & TT Ltd., Inc. v. Whitworth*, 212 F. Supp. 3d 429 (S.D.N.Y. 2016) (same), *Jackson v. Ramirez*, No. 15 Civ. 617 (GHW), 2016 WL 796854 (S.D.N.Y. Feb. 22, 2016) (same), *Grand Manor Health Related Facility, Inc. v. Hamilton Equities Inc.*, 941 F. Supp. 2d 406 (S.D.N.Y. 2013) (remanding state law claims after dismissing federal claims), *Maddaloni Jewelers, Inc. v. Rolex Watch U.S.A., Inc.*, 354 F. Supp. 2d 293 (S.D.N.Y. 2004) (same). As this case was removed from the Supreme Court of the State of New York, New York County, this Court remands Williams's state law claims to that Court.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Dismiss Williams's § 1983 claims.  It declines to retain supplemental jurisdiction over the remaining state law claims and therefore REMANDS those claims to state court.  As a result, Williams's motion for summary judgment is DISMISSED as moot.  The Clerk of Court is respectfully directed to terminate these motions, Docs. 8, 18, and to close this case.

SO ORDERED.

Dated:   July 10, 2020
         New York, New York

EDGARDO RAMOS, U.S.D.J.